THE NATIONAL CITY BANK OF NEW YORK, Petitioner, *v.*
DISTRICT COURT OF SAN JUAN, Respondent.

No. 946. Argued February 12, 1934.—Decided June 30, 1934.

*E. T. Fiddler* and *Jorge L. Córdova* for petitioner. *L. Feliú* for
defendant in the main action.

Mr. Justice Wolf delivered the opinion of the Court.

Andrés Oliver and Lorenzo Oliver executed a promissory note to the National City Bank of New York in the sum of $17,000 to mature on the 25th of May, 1931. The complaint in this case sets up that to secure the debt one of the defendants delivered in pledge to the plaintiff 200 shares of the Porto Rico Distilling Co. The note was not paid at maturity. A copy of the promissory note is attached to the complaint in this case. The title of the action is, "To recover a note and in execution of a pledge." The prayer of the complaint is that the court should render judgment against the defendants in the sum of $17,000 and interest and also provides that the marshal of the court should proceed to sell at public auction the 200 shares of the Porto Rico Distilling Company.

After filing its complaint the plaintiff obtained from the District Court of San Juan an attachment against the property of the defendants other than the shares of stock which it had in its possession.

The defendants filed a demurrer to the complaint, which we apprehend was not disposed of. Subsequently the defendants filed a motion to annul the order which secured the effectiveness of the judgment and the attachment obtained. The theory of the motion was that the plaintiff did not have a right to attach property of the defendants until it had first disposed of the 200 shares of the Porto Rico Distilling Company which it held in pledge. The District Court of San Juan agreed with the defendants.

██ From the order of the court annulling the attachment the plaintiff appealed. It is the effect of this appeal which was the principal question raised at the hearing of this case.

The court subsequently issued an order cancelling the attachment which had been recorded in the registry of property. The plaintiff applied to this court for a writ of certiorari and maintains, as it did in the court below, that the

appeal from the order cancelling the attachment suspended the operation of the said order. The petitioner invokes Section 297 of the Code of Civil Procedure. The lower court and the respondents relied on Section 14 of the Act to Secure the Effectiveness of Judgments (Comp. St., Section 5246) as follows:

"All allegations made by either party in the course of the proceedings regarding the remedy, shall be substantiated, notifying the other party by means of a summons to appear before any of the judges, each party having then an opportunity to produce their proofs. The court shall immediately decide the question, but in no case shall the incidental questions interfere with the course of the proceedings in the principal question or suit. Not more than five days shall elapse between the time the summons is served, and the appearance of the parties at the hearing, which shall not be suspended for any reason. *Every decision of the court shall immediately be carried into effect*, but the injured person may protest and declare his intention to take an appeal, as provided in the law of civil procedure, against the final judgment of the court." (Italics ours).

The plaintiff, however, maintains that under Section 297 of the Code of Civil Procedure the appeal suspended the effects of the order annulling the attachment and that the court had no further authority to cancel the record made in the registry of property pending the appeal.

Examining the Act of 1902, the only words that would support the contention of the respondents are: "Every decision of the court shall immediately be carried into effect, etc.," but these words mean that as in the case of any other interlocutory order, the party concerned may protest and subsequently take advantage of any supposed error on appealing from the judgment. These words do not mean that the direct appeal from the order now given by the Code of Civil Procedure would not suspend the effects of such an order. A careful examination of the Act of 1902 convinces us that there is nothing in it inconsistent with the provisions of Section 297 of the Code of Civil Procedure.

 The parties, however, have also discussed the question of whether the court ought to have annulled the attachment. As the order cancelling the attachment would deprive the plaintiff of a lien on property previously obtained, the matter involved is necessarily one of procedure, if not of quasi jurisdiction. In other words, if the orders of the court prevailed, the plaintiff would be out of court with respect to the attachment primarily sought to be obtained.

 The court and the respondents relied on Section 1773 of the Civil Code (as amended by Act No. 48 of 1930— Session Laws, pp. 368, 388) as follows:

"A creditor to whom the debt has not been paid at the proper time may proceed, before a notary, to alienate the pledge. This alienation must necessarily take place at public auction, and with the citation of the debtor and the owner of the pledge, in a proper case. If the pledge should not have been alienated at the first auction a second one, with the same formalities, may be held; and should no result be attained the creditor may become the owner of the pledge. In such case he shall be obliged to give a discharge for the full amount of his credit."

Now, while the complaint is brief it distinctly shows that the action was a personal one, as distinguished from one merely *in rem*. Its primary purpose was a recovery of the amount of the promissory note owed by the defendants and, secondarily, it may be said, that the marshal should sell the shares of stock delivered in pledge. The complaint specifically described the note and asked that judgment be rendered in favor of the plaintiff for the amount thereof.

The court below in part of its reasoning drew attention to the fact that the plaintiff ought to proceed to sell the pledged stock; that its conclusion was fortified by the fact that if in the second sale of the pledged article the pledgee bought it in, he had no further claim against the debtor.

Here, however, the pledgee elected to file a personal action against the defendants, and this it had a right to do. We find nothing in Section 1773 or in any other part of the Civil

Code which makes it incumbent upon the owner of a pledge to sell the article pledged before filing a personal action. Upon the failure of the pledgor to pay the note at its maturity, a cause of action arose in the plaintiff to proceed against the defendants and their property. In this regard the case is similar to *Fernández* v. *Luyando* and *Luyando* v. *Díaz*, decided on May 11th, 1934, the only existing difference being that in those cases the property involved was real and in the present case it is personal. Section 1758 of the Civil Code and perhaps some of the succeeding Sections show that a mortgage and a pledge are both collateral securities for the performance of a principal contract.

The general jurisprudence in the United States supports these conclusions, that is to say that a person who has a principal obligation secured by a pledge or collateral is not bound first to proceed against the pledge or collateral, but may begin a personal action against his debtor. *Lewis Trustee,* v. *United States,* 92 U. S. 618, 622; *Germania Savings Bank* v. *George Peuser,* 40 La. Ann. 796, citing the previous case; *Merril* v. *National Bank of Jacksonville,* 173 U. S. 140; note to *Robinson* v. *Hurley,* 79 Am. Dec. 500; 49 C. J. 987 *et seq.* See also *Baldrich* v. *Rivera,* 32 P.R.R. 781.

We have some idea that the jurisprudence shows that the plaintiffs in the execution of their suit are bound first to sell the pledged articles or to return them before they may sell other property of the debtor, but we need not definitely decide this point, especially as in this particular suit the plaintiff itself prays for a sale of the pledged article.

We, therefore, feel bound to hold that the court committed an error of procedure not only in cancelling, after the appeal, the entry in the registry of property, but also in annulling the attachments obtained to secure the effectiveness of the judgment.

The orders of October 31, 1933 and December 26, 1933 should be annulled and the case remanded to the District

Court of San Juan for further proceedings not inconsistent with this opinion.

Mr. Justice Aldrey concurs.

Mr. Justice Córdova Dávila took no part in the decision of this case.