THE NATIONAL CITY BANK OF NEW YORK, demandante y apelada, *v.* BÁRBARA F. VIUDA DE ECHEVARRÍA, FRANCISCA LÁTIMER VIUDA DE FERNÁNDEZ y la SUCESIÓN de MIGUEL ECHEVARRÍA, compuesta de su viuda Doña BÁRBARA F. VDA. DE ECHEVARRÍA y sus hijos legítimos LYDIA, JOSÉ, MIGUEL e IDALIA, menores de edad y su hija legítima emancipada ANGELA ECHEVARRÍA FERNÁNDEZ, demandados y apelantes.

Núm. 6867.—*Sometido:* Mayo 6, 1936. *Resuelto:* Febrero 2, 1937.

*Francisco de la Torre* y *Arturo O'Neill,* abogados de los apelantes; *Fiddler, Córdova & McConnell* y *José S. González,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El demandante pidió a la Corte de Distrito de San Juan que dictara sentencia contra los demandados condenándolos a pagarle tres mil dólares, intereses y costas, basándose en los siguientes hechos:

"I. Que la demandante es una asociación bancaria . . . .

"II. Que en agosto 7, 1929, las demandadas Bárbara F. Vda. de Echevarría y Francisca L. Vda. de Fernández, así como también don Miguel Echevarría, mancomunada y solidariamente, suscribieron y entregaron al American Colonial Bank of Porto Rico, por valor recibido, un pagaré por la suma de $3,000, pagadero en septiembre 15, 1929, con intereses al 9% anual desde la fecha de su vencimiento." . . .

"III. Que posteriormente dicho American Colonial Bank of Porto Rico endosó y entregó a la demandante The National City Bank of New York, el referido pagaré del cual es hoy dicha demandante tenedora y dueña.

"IV. Que don Miguel Echevarría falleció dejando como únicos, legítimos y universales herederos a su viuda doña Bárbara F. Vda. de Echevarría en la cuota usufructuaria que le corresponde, y a sus hijos legítimos Angela, Lydia, José, Miguel e Idalia Echevarría Fernández que forman y constituyen la Sucesión de Miguel Echevarría.

"V. Que dicho pagaré está vencido desde septiembre 15, 1929, y ninguno de los demandados, ni persona alguna a sus nombres han pagado el importe de dicho pagaré, ni en todo ni en parte, así como tampoco han pagado los intereses devengados sobre dicha suma desde noviembre 5, 1929, a pesar de los requerimientos que les ha hecho la demandante."

El endoso del pagaré se hizo constar al pie del propio documento, como sigue:

"Pay to the order of the National City Bank of New York without recourse.—American Colonial Bank of Porto Rico—(Firmado) R. Torres Ramis, Assistant Cashier.—Abr. 22, 1930."

Contestaron separadamente doña Francisca Látimer viuda de Fernández y doña Bárbara Fernández viuda de Echevarría por sí y por sus menores hijos. Admitieron como cierto lo alegado en los hechos primero y segundo de la demanda y del tercero el endoso del pagaré al demandante y su tenencia por parte del mismo. Negaron que el demandante fuera su dueño. La demandada Sra. Látimer admitió el hecho cuarto. También los otros demandados, pero alegando que no eran de hecho los herederos del Sr. Echevarría por no haber aceptado su herencia.

Todos los demandados reconocieron que el pagaré había vencido en septiembre 15, 1929, pero negaron su falta de pago, alegando en contrario que había sido satisfecho por cierta cesión que en vida hiciera Echevarría al American Colonial Bank, alegando además dicha cesión como defensa especial. Como defensa especial alegaron también que la demanda no aducía hechos suficientes determinantes de causa de acción.

Fué el pleito a juicio y la corte lo resolvió por sentencia declarando la demanda sin lugar en cuanto a doña Angela Echevarría Fernández que repudió la herencia paterna, y

con lugar en cuanto a los otros demandados a quienes condenó a pagar mancomunada y solidariamente la suma reclamada, intereses y costas, pudiendo hacerse efectiva la sentencia en cuanto a los menores solamente hasta donde alcanzaren los bienes que hubieren heredado de su causante.

No conformes los demandados perjudicados por la sentencia apelaron de ella para ante este tribunal. Sostienen que la corte de ditrito erró, 1, al declarar sin lugar su defensa de falta de causa de acción, y 2, al resolver, con vista de la prueba, que el banco demandante no estaba impedido como cesionario del American Colonial Bank, de proceder al cobro de la suma adeudada garantizada por la cesión que hiciera el deudor Echevarría al American Colonial Bank.

■■ Argumentando su primer señalamiento sostienen las apelantes que la demanda no aduce causa de acción porque el endoso del pagaré no se ajusta a las prescripciones del Código de Comercio sobre la materia. Citan el artículo 533 de dicho cuerpo legal que ordena que los endosos de las libranzas y pagarés a la orden deberán extenderse con la misma expresión que los de las letras de cambio, el 461 que determina que la propiedad de las letras de cambio se transferirá por endoso, y el 462 que expresa los requisitos de éste, a saber:

"1º. El nombre y apellido, razón social o título de la persona o compañía a quien se transmite la letra. 2º. El concepto en que el cedente se declare reintegrado por el tomador, según se expresa en el núm. 5º. del artículo 444. 3º. El nombre y apellido, razón social o título de la persona de quien se recibe o a cuenta de quien se carga, si no fuere la misma a quien se traspasa la letra. 4º. La fecha en que se hace. 5º. La firma del endosante o de la persona legítimamente autorizada que firme por él, lo cual se expresará en la antefirma."

También sostienen en su argumento que el pagaré no era susceptible de endoso porque estaba ya vencido cuando se intentó realizar su trasmisión. Citan el artículo 466 del Código de Comercio que prescribe que: "No podrán endosarse

las letras no expedidas a la orden, ni las vencidas y perjudicadas. Será lícita la transmisión de su propiedad por los medios reconocidos en el derecho común; y si, no obstante, se hiciere el endoso, no tendrá éste otra fuerza que la de una simple cesión.''

Comparando el endoso con el artículo 462 del Código de Comercio, encontramos que el único requisito que se dejó de cumplir fué el segundo. No aparece que lo fuera por ''valor recibido'', por ''valor en cuenta'' o por ''valor entendido''.

¿Queda, por ello, sin fuerza el traspaso? El primer lugar no sólo el endoso si que la trasmisión del pagaré fueron expresamente admitidos en sus alegaciones por las apelantes. Y en segundo lugar refiriéndose al propio artículo 462, recientemente dijo esta corte por medio de su Juez Asociado Sr. Wolf:

''Tenemos la idea de que para fines mercantiles corrientes esta disposición del Código de Comercio (inciso 4, supra) por interpretación o en alguna otra forma, estaba en gran parte en desuso al tiempo de efectuarse el endoso en cuestión. Para el futuro, el nuevo Código de Comercio ha obviado esta clase de discusión.'' *Domenech, Tes.* v. *Suau, Fiol & Co.,* 49 D.P.R. 755, 758.

La corte se refiere a la Ley Uniforme de Instrumentos Negociables que fué aprobada bajo el núm. 17 en abril 22, 1930, por virtud de la cual quedaron derogados y sustituídos los títulos X, XI y XII del Código de Comercio que comprendían desde el artículo 353 al 566. De acuerdo con la ley vigente un documento se negocia cuando se traspasa por una persona a otra de modo tal que constituya al cesionario en tenedor del mismo. Si es pagadero al portador, queda negociado por la entrega; si es a la orden, queda negociado por el endoso del tenedor, completado por la entrega. El endoso deberá escribirse en el mismo documento o en un papel que se le adhiera, bastando la firma del endosante, sin palabras adicionales, para que sea suficiente. Artículos 383 y 384 del Código de Comercio, ed. 1932.

Es cierto que las apelantes si bien aceptaron la existencia del endoso y de la entrega del pagaré, negaron que el demandante fuera dueño del mismo. Ello, sin embargo, no implicaría falta de causa de acción por parte del demandante que alegó en su demanda expresamente que era dueño y que probó que tenía en su poder el documento endosádole por su dueño, porque si el endoso en la forma en que consta, de acuerdo con la ley entonces vigente, no era suficiente para convertirlo por sí solo en dueño, lo era para conferirle una comisión de cobro, encontrándose en tal virtud debidamente ante la corte en el ejercicio de dicha comisión.

En el caso de *Royal Bank of Canada* v. *Balle,* 33 D.P.R. 984, 988, esta corte dijo:

"Ahora bien, si se aplicara como pretende el apelante la *'lex loci solutionis'* y por tanto se concluyera que la ley de Puerto Rico es la que rige para fijar los efectos del endoso, surgiría la cuestión de si estando el endoso sin fecha no se entendía trasmitida al tenedor la propiedad, sino la simple comisión de cobranza. Esa misma cuestión surgió en el caso de *Noriega & Alvarez* v. *Cruz & Co., S. en C.,* de julio 14, 1924 (pág. 559), quedando abierta para ser decidida hasta que un caso de más importancia incitara 'el interés de los abogados a hacer una investigación más acabada.' No es éste en verdad 'el caso de más importancia' que tenía en mente el tribunal. Los abogados se limitan aquí a esbozar la cuestión y su decisión además no es necesaria para la resolución del litigio, porque aún aceptando que la propiedad no se hubiera trasmitido, siempre se concluiría que el banco demandante tenedor del documento estaba comisionado para su cobro por 'Edward Jolles Co., Inc.' y tenía autoridad para iniciar el pleito."

Y en el de *Cintrón & Aboy* v. *Solá,* 22 D.P.R. 262, 270, expresó:

"La alegación hecha ante esta Corte Suprema de que los hechos expuestos en la demanda no determinan una causa de acción cae por su misma base, pues ya se considere el endoso a favor de Cintrón y Aboy como una comisión de cobranza, ya sean éstos cesionarios de Sorba, pueden ejercitar los mismos derechos que éste, entre ellos el de cobro del documento, que están ejercitando. Existe causa de acción."

■ No fué cometido, pues, el primer error. Tampoco el segundo. Las apelantes que ante la corte de distrito sostuvieron que la transacción realizada por Echevarría con su acreedor el American Colonial Bank cediéndole su participación en los bienes de la Miramar Realty Company, Ltd. saldó el pagaré, se limitan ahora a sostener que el efecto jurídico de dicha cesión en garantía de la deuda representada por el pagaré no puede ser otro que el de suspender su cobro hasta que la garantía se liquide.

Del documento en que consta el contrato cuyo alcance se discute, transcribimos lo que sigue:

"Que habiendo convenido garantizar el pago de dichas obligaciones con la cesión al American Colonial Bank of Puerto Rico para su propio beneficio y para beneficio de los demás bancos, de todo interés y beneficio que le corresponda en dicha sociedad, lo lleva a cabo de acuerdo con las siguientes cláusulas y condiciones:

"PRIMERA: El compareciente don Miguel Echevarría Navarro, con el consentimiento expreso de su esposa doña Bárbara Fernández de Echevarría, para garantizar todas y cada una de las obligaciones descritas en el párrafo cuarto anterior,

"CEDE Y TRASPASA al American Colonial Bank of Porto Rico, todo su interés, derecho y acción en los beneficios o adjudicaciones que decidan repartir o adjudicarse los socios de la Miramar Realty Co., Ltd. bien en dinero o en solares o derechos reales, en cualquier tiempo, bien antes de la disolución de la referida sociedad, o como resultado de la misma, autorizando a los demás socios de dicha sociedad y a la sociedad para pagar, otorgar, y traspasar directamente al American Colonial Bank of Porto Rico el importe o participación que le corresponda.

"SEGUNDA: Esta cesión se hace al American Colonial Bank of Porto Rico para su propio beneficio y para beneficio del Banco Popular de Puerto Rico y Banco de Nova Scotia, como Trustee de éstos, y en proporción de sus respectivos créditos, quedando la misma en todo su vigor y efecto hasta que todas las obligaciones antes descritas queden totalmente canceladas en cuyo caso se cancelará esta cesión."

Tras un estudio cuidadoso del propio documento y de toda la argumentación de las apelantes, estamos convencidos de que su contención es insostenible.

Por la cesión lo que recibió el acreedor fué una garantía. Ni expresa ni implícitamente se obligó a posponer el cobro directo de su crédito hasta la liquidación de la garantía. Una situación semejante quedó resuelta por esta corte en sentido contrario al que sostienen las apelantes en el caso de *The National City Bank of New York* v. *Corte de Distrito de San Juan,* 47 D.P.R. 128, así:

"En el presente caso, sin embargo, el tenedor de la prenda optó por radicar una acción personal contra los demandados, y esto tenía derecho a hacerlo. No hallamos nada en el artículo 1773 ni en ninguna otra parte del Código Civil que obligue al tenedor de una prenda, antes de radicar una acción personal, a vender primeramente el artículo pignorado. Al dejar el deudor de satisfacer el importe del pagaré a su vencimiento, surgió el derecho del demandante a proceder contra los demandados y sus bienes. A este respecto el caso es similar a los de *Fernández* v. *Luyando,* y *Luyando* v. *Díaz,* resueltos en 11 de mayo de 1934 (ante págs. 687 y 691) siendo la única diferencia existente que en dichos casos la propiedad en disputa era inmueble y la aquí envuelta es mueble. El artículo 1758 del Código Civil, y quizá algunos de los artículos siguientes, demuestran que la hipoteca y la prenda son garantías accesorias para el cumplimiento de un contrato principal.

"La jurisprudencia general en los Estados Unidos sostiene estas conclusiones, es decir, que una persona que tiene una obligación principal garantizada con prenda o colateral, no está obligada a proceder primeramente contra la prenda o colateral, sino que puede iniciar acción personal contra su deudor. *Lewis, trustee,* v. *United States,* 92 U. S. 618, 622; *Germania Saving Bank* v. *George Peuser,* 40 La. Ann. 796, en el que se cita el caso anterior; *Merrill* v. *National Bank of Jacksonville,* 173 U. S. 140; nota en el caso de *Robinson* v. *Hurley,* 79 Am. Dec. 500; 49 C. J. 987 et seq.; véase también el caso de *Baldrich* v. *Rivera,* 32 D.P.R. 850."

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.